# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 20-572V

| | |
|---|---|
| CARI R. CALOHAN, | |
| Petitioner, | Special Master Jennifer A. Shah |
| v. | |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | Filed: August 5, 2025 |
| Respondent. | |

*Mark T. Sadaka*, Law Offices of Sadaka Associates, LLC, Englewood, NJ, for Petitioner.
*Parisa Tabassian*, U.S. Department of Justice, Washington, DC, for Respondent.

## DECISION AWARDING INTERIM ATTORNEYS' FEES AND COSTS[1]

On May 7, 2020, Cari R. Calohan ("Petitioner") filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300aa-10, *et seq*.[2] (the "Vaccine Act" or "Program"), alleging that she developed neuromyelitis optica spectrum disorder ("NMO") caused by the influenza ("flu") vaccination she received on October 30, 2017. ECF No. 1 ("Pet.").

On September 27, 2021, Respondent filed his Rule 4(c) Report, contending that entitlement to compensation should be denied. ECF No. 32. Thereafter, the parties submitted expert reports and medical literature. *See* ECF Nos. 39, 41, 46, 50, 52, 57, 59. On January 15, 2025, Petitioner

---

[1] Because this Decision contains a reasoned explanation for the action in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

1

requested to proceed to an entitlement hearing, which is scheduled for July 13-14, 2026. ECF No. 67; Scheduling Order (non-PDF) dated 2/14/2025.

On January 23, 2025, Petitioner filed an application for interim attorneys' fees and costs, requesting a total of $80,694.46, comprised of $54,634.62 for attorneys' fees and $26,059.84 for attorneys' costs. ECF No. 68 ("Fees App.") at 5; Fees App., Ex. A at 1, 39. Respondent filed a response on January 27, 2025, deferring to me as to whether Petitioner has met the legal standard for an award of interim attorneys' fees and costs. ECF No. 69 ("Fees Resp.") at 2. Respondent noted that Petitioner's counsel's "hourly rate has increased by 42% over the past six years." *Id.* at 3, Fn. 2. Additionally, Respondent contended that Petitioner's expert, Lawrence Steinman, M.D., had retroactively increased his hourly rate by billing at a higher rate than was quoted in his retainer agreement with Petitioner's counsel. *Id.* at 4, Fn. 3. On February 12, 2025, Petitioner filed a reply brief.

This is Petitioner's first motion for interim fees and costs. Petitioner has not incurred any personal costs. *See* Fees App., Ex. A. Mr. Mark T. Sadaka has represented Petitioner for the entirety of this case.

I hereby **GRANT IN PART** Petitioner's application and award a total of **$78,549.86** in interim attorneys' fees and costs.

## I.   Legal Standard

### A. Interim Attorneys' Fees and Costs

The Federal Circuit has held that an award of interim attorneys' fees and costs is permissible under the Vaccine Act. *Shaw v. Sec'y of Health & Hum. Servs.,* 609 F.3d 1372 (Fed. Cir. 2010); *Avera v. Sec'y of Health & Hum. Servs.*, 515 F.3d 1343 (Fed. Cir. 2008). In *Cloer*, the Federal Circuit noted that "Congress [has] made clear that denying interim attorneys' fees under the Vaccine Act is contrary to an underlying purpose of the Vaccine Act." *Cloer v. Sec'y of Health & Hum. Servs.*, 675 F.3d 1358, 1361-62 (Fed. Cir. 2012).

In *Avera,* the Federal Circuit stated that "[i]nterim fees are particularly appropriate in cases where proceedings are protracted, and costly experts must be retained." *Avera*, 515 F.3d at 1352. Likewise, in *Shaw,* the Federal Circuit held that "where the claimant establishes that the cost of litigation has imposed an undue hardship and there exists a good faith basis for the claim, it is proper for the special master to award interim attorneys' fees." 609 F.3d at 1375. *Avera* did not, however, define when interim fees are appropriate; rather, it has been interpreted to allow special masters discretion. *See Avera*, 515 F.3d at 1352; *Kirk v. Sec'y of Health & Hum. Servs.*, No. 08-241V, 2009 WL 775396, at *2 (Fed. Cl. Spec. Mstr. Mar. 13, 2009); *Bear v. Sec'y of Health & Hum. Servs.*, No. 11-362V, 2013 WL 691963, at *4 (Fed. Cl. Spec. Mstr. Feb. 4, 2013). Special masters have viewed the three *Avera* criteria -- protracted proceedings, costly expert testimony, and undue hardship -- as factors to consider in a flexible balancing test. *Avera*, 515 F.3d at 1352; *see Al-Uffi v. Sec'y of Health & Hum. Servs.*, No. 13-956V, 2015 WL 6181669, at *7 (Fed. Cl. Spec. Mstr. Sept. 30, 2015).

The undue hardship inquiry looks at more than just financial involvement of a petitioner; it also looks at any money expended by a petitioner's counsel. *Kirk*, 2009 WL 775396, at *2. Referring to *Avera*, former Chief Special Master Golkiewicz in *Kirk* found that "the general principle underlying an award of interim fees [is] clear: avoid working a substantial financial hardship on petitioners and their counsel." *Id*.

### B. Good Faith

A petitioner is eligible for an interim award of reasonable attorneys' fees and costs only if the special master finds that the petition was brought in good faith and with a reasonable basis. §15(e)(1); *Avera*, 515 F.3d at 1352; *Shaw*, 609 F.3d at 1372; *Woods v. Sec'y of Health & Hum. Servs*, 105 Fed. Cl. 148, 154 (2012); *Friedman v. Sec'y of Health & Hum. Servs.*, 94 Fed. Cl. 323, 334 (2010); *Doe 21 v. Sec'y of Health & Hum. Servs.*, 89 Fed. Cl. 661, 668 (2009); *Bear*, 2013 WL 691963, at *5; *Lumsden v. Sec'y of Health & Hum. Servs.*, No. 97-588V, 2012 WL 1450520, at *4 (Fed. Cl. Spec. Mstr. Mar. 28, 2012). The good faith requirement is met through a subjective inquiry. *Di Roma v. Sec'y of Health & Hum. Servs.*, No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993). It "focuses upon whether [P]etitioner honestly believed he had a legitimate claim for compensation." *Turner v. Sec'y of Health & Hum. Servs.*, No. 99-544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007). Without evidence of bad faith, "petitioners are entitled to a presumption of good faith." *Grice v. Sec'y of Health & Hum. Servs.*, 36 Fed. Cl. 114, 121 (1996). Thus, so long as Petitioner had an honest belief that her claim could succeed, the good faith requirement is satisfied. *See Riley v. Sec'y of Health & Hum. Servs.*, No. 09-276V, 2011 WL 2036976, at *2 (Fed. Cl. Spec. Mstr. Apr. 29, 2011) (citing *Di Roma*, 1993 WL 496981, at *1); *Turner*, 2007 WL 4410030, at *5.

### C. Reasonable Basis

Unlike the good faith inquiry, an analysis of reasonable basis requires more than just a petitioner's belief in her claim. *Turner*, 2007 WL 4410030, at *6-7. Instead, the claim must be supported by objective evidence -- medical records or medical opinion. *Sharp-Roundtree v. Sec'y of Health & Hum. Servs.*, No. 14-804V, 2015 WL 12600336, at *3 (Fed. Cl. Spec. Mstr. Nov. 3, 2015).

Although the statute does not define the quantum of proof needed to establish reasonable basis, it is "something less than the preponderant evidence ultimately required to prevail on one's vaccine-injury claim." *Chuisano v. United States,* 116 Fed. Cl. 276, 283 (2014). The Court of Federal Claims affirmed in *Chuisano* that "[a]t the most basic level, a petitioner who submits no evidence would not be found to have reasonable basis. . ." *Id.* at 286. The Court in *Chuisano* found that a petition that relies on temporal proximity and a petitioner's affidavit is not sufficient to establish reasonable basis. *Id.* at 290; *see also Turpin v. Sec'y Health & Hum. Servs.*, No. 99-564V, 2005 WL 1026714, *2 (Fed. Cl. Spec. Mstr. Feb. 10, 2005) (finding no reasonable basis when petitioner submitted an affidavit and no other records); *Brown v. Sec'y Health & Hum. Servs.*, No. 99-539V, 2005 WL 1026713, *2 (Fed. Cl. Spec. Mstr. Mar. 11, 2005) (finding no reasonable basis when petitioner presented only e-mails between her and her attorney). The Federal Circuit has affirmed that "more than a mere scintilla but less than a preponderance of proof could provide sufficient grounds for a special master to find reasonable basis." *Cottingham v.*

*Sec'y of Health & Hum. Servs.*, No. 2019-1596, 971 F.3d 1337, 1346 (Fed. Cir. 2020) (finding Petitioner submitted objective evidence supporting causation when she submitted medical records and a vaccine package insert); *see also James-Cornelius v. Sec'y of Health & Hum. Servs.*, 984 F.3d 1374, 1380 (Fed. Cir. 2021) (finding that "the lack of an express medical opinion on causation did not by itself negate the claim's reasonable basis").

"[I]n deciding reasonable basis the [s]pecial [m]aster needs to focus on the requirements for a petition under the Vaccine Act to determine if the elements have been asserted with sufficient evidence to make a feasible claim for recovery." *Santacroce v. Sec'y of Health & Hum. Servs.*, No. 15-555V, 2018 WL 405121, at *7 (Fed. Cl. Jan. 5, 2018). Special masters cannot award compensation "based on the claims of petitioner alone, unsubstantiated by medical records or by medical opinion." 42 U.S.C. § 300aa-13(a)(1). Special masters and judges of the Court of Federal Claims have interpreted this provision to mean that petitioners must submit medical records or expert medical opinion in support of causation-in-fact claims. *See Waterman v. Sec'y of Health & Hum. Servs.,* 123 Fed. Cl. 564, 574 (2015) (citing *Dickerson v. Sec'y of Health & Hum. Servs.*, 35 Fed. Cl. 593, 599 (1996) (stating that medical opinion evidence is required to support an on-Table theory where medical records fail to establish a Table injury)).

When determining if a reasonable basis exists, a special master may consider myriad factors, including "the factual basis of the claim, the medical and scientific support for the claim, the novelty of the vaccine, and the novelty of the theory of causation." *Amankwaa*, 138 Fed. Cl. at 289. This approach allows the special master to look at applications for attorneys' fees and costs on a case-by-case basis. *Hamrick v. Sec'y of Health & Hum. Servs.*, No. 99-683V, 2007 WL 4793152, at *4 (Fed. Cl. Spec. Mstr. Nov. 19, 2007).

**II.     Discussion**

    **A.  Undue Financial Hardship**

The Federal Circuit has noted that interim fees "are particularly appropriate in cases where proceedings are protracted, and costly experts must be retained." *Avera*, 515 F.3d at 1352 (Fed. Cir. 2008). Although Petitioner's counsel filed the petition in 2020, counsel began working on this case in 2018 and has not yet been awarded interim fees and costs. ECF No. 1; Fees App., Ex A. Counsel filed extensive medical records and an affidavit from Petitioner, retained an expert, and filed three expert reports and supporting medical literature. ECF Nos. 6-7, 9, 19, 24, 39, 41, 50, 57. I find that Petitioner would suffer undue hardship without an award of interim fees and costs.

    **B.  Good Faith and Reasonable Basis**

Respondent has not raised any specific objection to Petitioner's good faith or reasonable basis for this claim, and he leaves the determination to my discretion. Fees Resp. at 2. I find that the petition was filed in good faith.

As discussed above, the threshold for reasonable basis is much lower than the burden to prove entitlement to compensation, which requires preponderant evidence. Petitioner filed

4

extensive medical records and three expert reports. I find that Petitioner has maintained a reasonable basis for her claim.

As there is no other reason to deny an award of interim attorneys' fees and costs, I will award Petitioner's reasonable fees and costs as described below.

### C. Attorneys' Fees

Petitioner requests a total of $54,634.62 in attorneys' fees for the Law Offices of Sadaka Associates, LLC ("Sadaka Associates"). Fees App. at 5; Fees App., Ex. A at 1, 39. Petitioner bears the burden of establishing that the rates charged, hours expended, and costs incurred are reasonable. *Wasson v. Sec'y of Health & Hum. Servs.*, 24 Cl. Ct. 482, 484 (1993).

1. Reasonable Hourly Rate

A reasonable hourly rate is defined as the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Avera*, 515 F.3d at 1348 (quoting *Blum*, 465 U.S. at 896 n.11). In general, this rate is based on "the forum rate for the District of Columbia" rather than "the rate in the geographic area of the practice of [P]etitioner's attorney." *Rodriguez v. Sec'y of Health & Hum. Servs.*, 632 F.3d 1381, 1384 (Fed. Cir. 2011) (citing *Avera*, 515 F. 3d at 1349).

*McCulloch* provides the framework for determining the appropriate compensation for attorneys' fees based upon the attorneys' experience. *See McCulloch v. Sec'y of Health & Hum. Servs.*, No. 09–293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015). The Office of Special Masters has accepted the decision in *McCulloch* and has issued a Fee Schedule for subsequent years.[3]

Petitioner requests compensation for her counsel, Mr. Mark Sadaka, at the following hourly rates: $396.00 per hour for work performed in 2018; $405.00 per hour for work performed in 2019; $422.00 per hour for work performed in 2020; $444.00 per hour for work performed in 2021; $458.00 per hour for work performed in 2022; $482.00 per hour for work performed in 2023; and $563.00 per hour for work performed in 2024. Fees App. at 5. Respondent notes that "[P]etitioner's counsel's hourly rate has increased by 42% over the past six years," but he does not explicitly object to the requested rates. Fees Resp. at 3, Fn. 2.

Petitioner also requests compensation for work performed by Ms. Michele Curry, paralegal, at the following rates: $150.55 per hour for work performed in 2018; $156.00 per hour for work performed in 2019; $163.00 per hour for work performed in 2020; $172.00 per hour for work performed in 2021; $177.00 per hour for work performed in 2022; $186.00 per hour for work performed in 2023; and $197.00 per hour for work performed in 2024. Fees App. at 5.

---

[3] The Office of Special Masters Attorneys' Forum Hourly Rate Fee Schedule for 2015 through 2025 can be accessed at: https://www.uscfc.uscourts.gov/osm-attorneys-forum-hourly-rate-fee-schedules. The hourly rates contained within the schedules are updated based on the decision in *McCulloch*, 2015 WL 5634323.

The requested rates for 2018-2023 are consistent with what Mr. Sadaka has previously been awarded; however, Mr. Sadaka's hourly rate for 2024 has been set by other special masters at $515.00, not $563.00, as Mr. Sadaka has requested here. *Efron v. Sec'y of Health & Hum. Servs.*, No. 20-1405V, 2024 WL 4604594, at *3 (Fed. Cl. Spec. Mstr. Sept. 25, 2024) (awarding Mr. Sadaka a rate of $515.00 per hour for work performed in 2024); *Kohlmeyer v. Sec'y of Health & Hum. Servs.*, No. 19-1694V, 2024 WL 4931335, at *3 (Fed. Cl. Spec. Mstr. Nov. 5, 2024). Application of the approved rate results in a $552.00 reduction.[4]

I find the requested paralegal rates to be reasonable, based on the Office of Special Masters' Fee Schedule and what Mr. Sadaka's staff has previously been awarded. *See Efron*, 2024 WL 4931335, at *3.

2. Hours Reasonably Expended

Attorneys' fees are awarded for the "number of hours reasonably expended on the litigation." *Avera*, 515 F.3d at 1348. Ultimately, it is "well within the Special Master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." *Saxton ex rel. Saxton v. Sec'y of Health & Hum. Servs.*, 3 F.3d 1517, 1522 (Fed. Cir. 1993). In exercising that discretion, special masters may reduce the number of hours submitted by a percentage of the amount charged. *See Broekelschen v. Sec'y of Health & Hum. Servs.*, 102 Fed. Cl. 719, 728-29 (2011) (affirming the special master's reduction of attorney and paralegal hours); *Guy v. Sec'y of Health & Hum. Servs.*, 38 Fed. Cl. 403, 406 (1997) (affirming the special master's reduction of attorney and paralegal hours). Further, special masters may reduce awards *sua sponte*, independent of enumerated objections from the respondent. *Sabella v. Sec'y of Health & Hum. Servs.*, 86 Fed. Cl. 201, 208-09 (Fed. Cl. 2009); *Savin v. Sec'y of Health & Hum. Servs.*, 85 Fed. Cl. 313, 318 (Fed. Cl. 2008), *aff'd*, No. 99-573V, 2008 WL 2066611 (Fed. Cl. Spec. Mstr. Apr. 22, 2008).

A special master need not engage in a line-by-line analysis of petitioner's fee application when reducing fees. *Broekelschen*, 102 Fed. Cl. at 729. Special masters may look to their experience and judgment to reduce an award of fees and costs to a level they find reasonable for the work performed. *Saxton*, 3 F.3d at 1521. It is within a special master's discretion to make a global reduction to the total amount of fees requested. *See Hines v. Sec'y of Health & Hum. Servs.*, 22 Cl. Ct. 750, 753 (1991) ("special masters have wide latitude in determining the reasonableness of both attorneys' fees and costs"); *Hocraffer v. Sec'y of Health & Hum. Servs.*, No. 99-533V, 2011 WL 3705153 (Fed. Cl. Spec. Mstr. July 25, 2011), *mot. for rev. denied*, 2011 WL 6292218, at *13 (Fed. Cl. 2011) (denying review of the special master's decision and endorsing "a global – rather than line-by-line – approach to determine the reasonable number of hours expended in this case").

While attorneys may be compensated for non-attorney-level work, the rate must be comparable to what would be paid for a paralegal or secretary. *See O'Neill v. Sec'y of Health & Hum. Servs.*, No. 08–243V, 2015 WL 2399211, at *9 (Fed. Cl. Spec. Mstr. Apr. 28, 2015). Clerical

---

[4] Applying Mr. Sadaka's previously awarded rate of $515.00 for work performed in 2024 results in a $552.00 reduction ($563.00 - $515.00 = $48.00 x 11.5 hrs. = $552.00 reduction).

6

and secretarial tasks should not be billed at all, regardless of who performs them. *See*, *e.g.*, *McCulloch*, 2015 WL 5634323, at *26. It is well-established that billing for administrative and clerical tasks is not permitted in the Vaccine Program. *Rochester v. United States*, 18 Cl. Ct. 379, 387 (1989).

The overall hours spent on this matter appear to be largely reasonable; however, a minor reduction is necessary due to time billed for administrative and clerical tasks. The majority of these entries bill between 0.1 and 0.5 hours for receiving and reviewing status reports and orders. *See* Fees App., Ex. A. Examples include (but are not limited to):

- December 13, 2022: 0.5 hours billed by Ms. Curry to "Draft notice of filing for medical literature. (exhibit #19-38)";

- February 23, 2023: 0.1 hours billed by Mr. Sadaka to "Receive/review Order granting Motion for Extension of Time"; and

- May 7, 2024: 0.1 hours billed by Mr. Sadaka to "Receive/review order granting motion."

*Id.* Cumulatively, Mr. Sadaka and his paralegal billed approximately 3.9 hours for these types of tasks, resulting in charges of $1,292.60. These issues have previously been raised with Mr. Sadaka. *See Fisher v. Sec'y of Health & Hum. Servs.*, No. 18-1705V, 2022 WL 2299985, at *5 (Fed. Cl. Spec. Mstr. Apr. 26, 2022); *see also Nemmer v. Sec'y of Health & Hum. Servs.*, No. 17-1464V, 2020 WL 1910695 (Fed. Cl. Spec. Mstr. Feb. 20, 2020). Accordingly, I will deduct $1,292.60 from the requested attorneys' fees for these charges.

Accordingly, Petitioner is awarded attorneys' fees in the amount of **$52,790.02**.[5]

**D. Reasonable Costs**

Petitioner requests a total of $26,059.84 for attorneys' costs, consisting of $594.26 for medical record requests; $40.58 for mailing/distribution costs; $400.00 for court filing fees; and $25,025.00 for Dr. Steinman's expert costs. Fees App., Exs. A at 39-40, B.

Petitioner provided documentation for the costs associated with the medical record requests, mailing/distribution services, and court filing fees. Fees App., Ex. B at 1-19, 21. I find the costs for these items to be reasonable and award them in full. I discuss Petitioner's expert costs below.

1. Petitioner's Expert Costs for Lawrence Steinman, M.D.

Petitioner requests $25,025.00 for Dr. Steinman's work, at a rate of $550.00 per hour. Fee App., Ex. B at 23. The records reflect that Dr. Steinman submitted two invoices for his work in this

---

[5] This total reflects Petitioner's $54,634.62 request for attorneys' fees minus the $552.00 reduction for Mr. Sadaka's 2024 rate and the $1,292.60 reduction for paralegal billings. ($54,634.62 - $552.00 - $1,292.60 = $52,790.02.02).

7

case. Fees App., Ex. B at 20, 22-23.  The first invoice, dated March 28, 2022, shows that Dr. Steinman required a "retainer for the first six hours of work in this case at $500/hr for $3000."  Fees App., Ex. B at 20.  The second invoice, dated November 29, 2024, includes an itemization of the hours billed for 2022-2024.  Fees App., Ex B. at 22-23.  The November 2024 invoice shows that Dr. Steinman billed a total of 45.5 hours in this case at a rate of $550.00 per hour, for a total of $25,025.00.  *Id.*  According to the invoice, Dr. Steinman billed for the first six hours of work in this case at a rate of $550.00 per hour, rather than $500.00 per hour, as the March 2022 invoice provided.  Fees App., Ex. B at 20, 22-23.  Respondent maintains that Dr. Steinman "retroactively increased his hourly rate to $550.00/hour for work performed in 2022, as well as for work in 2023 and 2024."  Fees Resp. at 4, Fn. 3.

Around the time Dr. Steinman began working on this case in September 2022, other special masters began approving a $550.00 hourly rate for his work.  *See   Mason v. Sec'y of Health & Hum. Servs.*, 2022 WL 4693380, at *3 (Fed. Cl. Spec. Mstr. Sept. 8, 2022) (finding that Dr. Steinman "demonstrated experience with the Vaccine Program has recently been deemed grounds for a slight rate increase" from $500.00 per hour to $550.00 per hour); *Anderson v. Sec'y of Health & Hum. Servs.*, No. 20-440V, 2022 WL 3151737, at *3 (Fed. Cl. Spec. Mstr. July 13, 2022) (finding that "Dr. Steinman's expertise in the medical field and long-standing participation in the Vaccine Program" justified an hourly rate of $550.00 even though this was higher than the $500.00 "informal cap on expert fees" in the Program).  As Dr. Steinman's more recent rate of $550.00 per hour has been approved in other cases, I see no reason to disturb his request with respect to work not covered by the previously-charged retainer.  *See Morrison v. Sec'y of Health and Hum. Servs.*, No. 18-386V, 2023 WL 1873254, at *7 (Fed. Cl. Spec. Mstr. Feb. 10, 2023) (granting $550.00 per hour for Dr. Steinman's work performed in 2021 and 2022); *see also Gardener v. Sec'y of Health & Hum. Servs.*, No. 17-1851V, 2023 WL 3775170 (Fed. Cl. June 2, 2023) (awarding Dr. Steinman his $3,000.00 retainer and $550.00 rate for work performed in 2020 and 2021).  However, because Dr. Steinman previously billed for the six hours of work covered by the retainer at a rate of $500.00, I will not compensate him for those hours at the higher rate.  *See* Fees App., Ex. B at 20, 22-23.  This results in a $300.00 reduction to the award.

Accordingly, I will award $3,000.00 for the first six hours of Dr. Steinman's work in this case, and the remaining 39.5 hours of his work will be reimbursed at $550.00 per hour.  The total award for Dr. Steinman's work is $24,725.00.[6]

I award Petitioner a total of **$25,759.84** in attorneys' costs.[7]

## III.   Conclusion

Accordingly, in the exercise of the discretion afforded to me in determining the propriety of awards of interim attorneys' fees and costs, and based on the foregoing, I **GRANT IN PART**

---

[6] This total reflects Dr. Steinman's $3,000.00 retainer plus the remaining 39.5 hours of work at a rate of $550.00 per hour.  (39.5 hours x $550.00 rate = $21,725.00 + $3,000.00 retainer = $24,725.00 award).

[7] Petitioner is awarded $594.26 for medical record requests; $40.58 for mailing/distribution costs; $400.00 for court filing fees; and $24,725.00 for Dr. Steinman's expert costs; totaling $25,759.84.

Petitioner's application. Petitioner is awarded interim attorneys' fees and costs in the total amount of **$78,549.86** as follows:

- A lump sum in the amount of **$78,549.86**, representing reimbursement of Petitioner's interim attorneys' fees and costs, to be paid through an ACH deposit to Petitioner's former counsel's IOLTA account for prompt disbursement.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of Court **SHALL ENTER JUDGMENT** in accordance with this decision.[8]

**IT IS SO ORDERED.**

**s/ Jennifer A. Shah**
Jennifer A. Shah
Special Master

---

[8] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment by filing a joint notice renouncing their right to seek review.